IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>    v.<br><br>GARLAND JOSEPH NELSON,<br>[DOB: 04/30/1994]<br><br>                   Defendant. | Case No. _____<br><br>COUNT ONE:<br>(Mail Fraud)<br>18 U.S.C. § 1341<br>NMT 20 Years' Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years' Supervised Release<br>Class C Felony<br><br>$100 Mandatory Special Assessment<br><br>ALLEGATION OF CRIMINAL FORFEITURE<br>18 U.S.C. §§ 982(a)(1) and (a)(2)(A)<br><br>ORDER OF RESTITUTION |

# I N D I C T M E N T

THE GRAND JURY CHARGES THAT:

## INTRODUCTION AND BACKGROUND

1.  J4s Farm Enterprises, Inc., was incorporated in the state of Missouri on June 11, 2018. Tomme Sue Feil was the president, secretary, and registered agent of the corporation. The corporation was in Braymer, Caldwell County, Missouri; its purpose was farming and trucking.

2.  Defendant Garland Joseph "Joey" Nelson was the son of Tomme Feil and an employee of J4s. J4s had a business bank account at Pony Express Bank. Nelson was not a signer on the J4s business account.

3.  Nelson had a business checking account at Central Bank of the Midwest in the name 'Garland J Nelson dba Nelson Land and Cattle,' account number ending 5150.

4. Nicholas and Justin Diemel were principals in Diemel's Livestock, LLC in Shawano County, Wisconsin. Diemel's Livestock invested and traded in cattle and other livestock.

## THE SCHEME TO DEFRAUD

5. Between November 2018 and July 31, 2019, Nelson engaged in a scheme to defraud. Nelson agreed to care for cattle belonging to Diemel's Livestock, to feed and pasture the cattle and then sell the cattle. He agreed to send Diemel's Livestock the sale price of the cattle minus the cost of feed and yardage (costs of raising the cattle).

6. Nelson kept some cattle at his mother's farm in Braymer. He also used other land to pasture the cattle.

7. Nelson did not properly care for cattle due to incompetence, neglect, or maltreatment. Nelson fed cattle inadequately and poorly. He dropped hay bales in a pasture for calves but did not remove the plastic covering so that calves ate the plastic and died. Cattle entrusted to Nelson had high death rates dues to underfeeding, neglect, and/or maltreatment. As one example, in December 2018, Nelson was entrusted with feeding and caring for 131 calves he co-owned with a Kansas farmer. On May 23, 2019, Nelson dropped off 35 calves at the co-owner's farm in Kansas, apparently all that survived of the 131. Of the surviving 35 calves, many were emaciated and had ringworm. Some calves had their ears torn as though identifying ear tags had been removed.

8. The Diemels sent several loads of cattle to Nelson from November 2018 through approximately April 2019. Nelson, through J4s, sold some loads of cattle and paid the Diemels. However, Nelson sold, traded, and/or killed many of the Diemels' cattle without remitting the

payments to the Diemels. Nelson continued to fraudulently bill the Diemels for feed and yardage for cattle that had been sold, traded, or had died.

9. Throughout the spring of 2019, Nicholas Diemel pressed Nelson for payment for his cattle. He sent no more loads of cattle to Nelson while he awaited his payment.

10. To deprive the Diemels of their cattle or their money and to prevent them from recovering either their cattle or their money, Nelson fraudulently sent the Diemels a bad check and then fraudulently promised them payment so that they personally came to Missouri.

11. From May 1, 2019, to July 31, 2019, Nelson's Central Bank of the Midwest business checking account, #5150, had a continuous balance of 21 cents, in that Nelson made no deposits to or withdrawals from the account.

12. In June 2019, Nelson wrote a check on his Central Bank of the Midwest account #5150 to Diemel's Livestock. The note stated, "2 Loads Feeder cattle". The amount was $215,936.50. Nelson damaged the check by tearing it and abrading it so that it would not be readable or able to be submitted for payment. A photo of the check is below.



13. Nelson included with the check some certified automated truck scale certificates, purporting to show cattle weights. The scale certificates were also torn and damaged.

14. On June 24, 2019, Nelson had a friend mail, via FedEx Express, the check and scale certificates from "Joe Nelson, J4s Farm Enterprises, Braymer, MO 64624" to "Diemel Livestock llc, W3567 HWY 156, Pulaski, WI 54162". The package arrived in Wisconsin on June 25, 2019. While the check and scale certificates were damaged, the FedEx envelope was not damaged.

15. As Nelson well knew and as part of his scheme, the check could not be submitted for payment. Nicholas Diemel determined to come to Missouri to retrieve his money.

16. On July 17, 2019, Nicholas Diemel bought two round-trip airline tickets from Milwaukee to Kansas City. On July 20, 2019, Nicholas and Justin Diemel arrived in Kansas City and rented a pickup truck from Budget.

17. On July 21, 2019, the Diemels drove their rental truck to Nelson's mother's farm in Braymer, Missouri, where Nelson killed them both and attempted to dispose of their bodies.

## COUNT ONE

18. Paragraphs one through seventeen are incorporated by reference.

19. From on or about November 2018 to on or about July 21, 2019, in the Western District of Missouri and elsewhere, defendant GARLAND JOSEPH NELSON, with the intent to defraud and for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, knowingly caused to be sent and delivered by FedEx Express, a private and commercial carrier, a mailing containing a damaged check in the amount of $215,936.50, drawn on Central Bank of the Midwest account #5150, to pay Diemel's Livestock for cattle, when

4

Case 5:21-cr-06006-SRB   Document 1   Filed 05/18/21   Page 4 of 6

the account had a balance of 21 cents, with such mailing being an execution of his scheme and artifice to defraud the Diemels.

All in violation of Title 18, United States Code, Section 1341.

## **ALLEGATION OF FORFEITURE**

20. The allegations contained in paragraphs one through nineteen are re-alleged and incorporated for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

21. As a result of the offense alleged in Count One, the defendant shall forfeit to the United States all property, real and personal, constituting, or derived from proceeds traceable to these offenses, including but not limited to the following property: at least $215,936 in United States currency and all interest and proceeds traceable thereto, representing the net proceeds obtained by Nelson in that sum in aggregate, constitutes or is derived from, proceeds traceable to the scheme and offense alleged in Count One.

22. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    (1)    cannot be located upon the exercise of due diligence;

    (2)    has been transferred, or sold to, or deposited with, a third person;

    (3)    has been placed beyond the jurisdiction of the Court;

    (4)    has been substantially diminished in value; or

    (5)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States pursuant to Title 21, United States Code, Section 853(p) to seek forfeiture of any other property of Nelson's, up to the value of the above forfeitable property.

A TRUE BILL.

/s/ Pamela Carter-Smith
FOREPERSON OF THE GRAND JURY

/s/ Kathleen D. Mahoney
Kathleen D. Mahoney
Assistant United States Attorney

Dated:     5/18/2021
        Kansas City, Missouri