## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **vs.** | **)** | **Case No. 21-06006-01-CR-SJ-BP** |
| | **)** | |
| **GARLAND JOSEPH NELSON,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

## REPORT AND RECOMMENDATION

Pending is Defendant Garland Joseph Nelson's Motion to Suppress Statements filed on July 8, 2022. Doc. 31. The Government filed its opposition to Defendant's motion on July 15, 2022. Doc. 34. Defendant did not file a reply, and the time for doing so has passed. L.R. 7.0(c)(3). For the reasons below, it is recommended that Defendant's motion be **DENIED**.

## I.     BACKGROUND

In this Court, Defendant is charged with one count of mail fraud in violation of 18 U.S.C. § 1341 (Count One), and one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Two). Doc. 23. The superseding indictment also seeks forfeiture of all property constituting or derived from proceeds traceable to the offense charged in Count one, including at least $215,936.00. *Id*. at 5-6.

During an investigation into two missing persons, Defendant, with whom the individuals had traveled to meet, was initially arrested for and charged in the Circuit Court of Caldwell County,

Missouri, with tampering with a motor vehicle in the first degree. Docs. 31-1, 34-2, 34-3, 34-4.[1] Defendant argues the probable cause affidavit supporting his arrest warrant included a false statement, was misleading, and omitted a fact. Doc. 31 at 1, 3-7; Doc. 31-4.[2] He contends the probable cause affidavit violated his Fourth Amendment rights, and his post-arrest statements should be suppressed. Doc. 31 at 1, 3-7.[3]

On July 21, 2022, the undersigned held a hearing on Defendant's motion. Docs. 36-37. Defendant was present and represented by counsel, Assistant Federal Public Defender Carie Allen and Assistant State Public Defender Patrick Berrigan. The Government was represented by Assistant United States Attorney Kathleen Mahoney. At the hearing, counsel presented argument, and two witnesses testified. In addition, the Court admitted eighteen exhibits. Doc. 38.

## II.      FINDINGS OF FACT[4]

### A.      Missing Persons Report and Defendant's Initial Contact with Law Enforcement

1.      On July 21, 2019, the Caldwell County, Missouri Sheriff's Department received a report that brothers Nicholas and Justin Diemel were missing. Doc. 31-1 at 1; Tr. at 20-21. According to their father, the brothers recently flew to Kansas City to meet with and collect a check from Defendant for cattle that Defendant tended and sold for the Diemels. Doc. 31-1 at 1.

---

[1] In state court, Defendant remains charged with tampering with a motor vehicle in the first degree. Docs. 34-4, 34-7, 34-8; Gov't Exs. 2, 4, 7-8; *see also Missouri v. Nelson*, Nos. 19CL-CR00242, 19CL-CR00366-01, 20JO-CR00539. He was subsequently charged with two counts of first-degree murder, two counts of abandonment of a corpse, two counts of tampering with physical evidence, and two counts of armed criminal action. Docs. 34-7, 34-8. He was also charged with unlawful possession of a firearm, but the State dismissed that charge on April 4, 2022. *Nelson*, No. 20JO-CR00539.

[2] The July 26, 2019 probable cause affidavit was an exhibit to Defendant's motion. *See* Doc. 31-4. It was also an exhibit to the Government's opposition to Defendant's motion. *See* Doc. 34-1. During the hearing, it was admitted as Government's Exhibit 1. *See* Gov't Ex. 1. For ease of review, the undersigned refers only to the exhibit attached to Defendant's motion (i.e., Doc. 31-4).

[3] At the time of the evidentiary hearing in this case, Defendant had not sought suppression of the statements in question in the pending state court proceeding. Tr. at 21.

[4] The undersigned's findings of fact are limited to the issues raised in Defendant's motion.

The brothers did not board their return flight to Wisconsin and were not answering phone calls from their families. *Id*. He last spoke with his sons on July 20, 2019. *Id*.

2.      That evening, Caldwell County Deputy Sheriff Ryley Horinek contacted Defendant and asked him about the Diemels. Tr. at 21; Doc. 31-1 at 1-2. Defendant told Deputy Horinek the Diemels first visited him at his residence on 3321 Southeast Catawba Road, Braymer, Missouri, on July 20, 2019. Doc. 31-1 at 2.[5] Defendant indicated the group had planned to go out to eat, but the Diemels advised him they would not be able to go eat because they did not feel well. Doc. 31-1 at 2.

3.      According to Defendant, he also had contact with the Diemels on July 21, 2019. Doc. 31-1 at 2. At approximately 11:00 a.m., the Diemels, accompanied by a short Hispanic male who "looked like a cowboy," returned to Defendant's residence. Doc. 31-1 at 2. Defendant got in the black pickup truck driven by one of the Diemels, and the four individuals toured Defendant's property and observed some of the Diemels' cattle that Defendant was tending. *Id*. Defendant indicated he last saw the Diemels around 1:00 p.m. on July 21, 2019. Doc. 31-1 at 2; Tr. at 21.

**B.      Discovery of the Diemels' Rental Truck**

4.      On July 22, 2019, the black Ford F-250 truck, which was rented by Nicholas Diemel on July 20, 2019 (hereinafter, "rental truck"), was found in a commuter parking lot in Holt, Missouri. Doc. 31-4 at 1-2; Tr. at 22. The rental truck was unlocked and was left running with the lights on. Doc. 31-4 at 1-2; Tr. at 22, 56.

---

[5] Defendant also conducted farming operations at 3321 Southeast Catawba Road. Docs. 31-1, 31-2, 31-4, 34-1, 34-2, 34-3, 34-6, 34-8; Tr. at 21.

**C.    Interview of Defendant on July 23, 2019**

5.      On July 23, 2019, Defendant agreed to talk with Caldwell County Sergeant Tony Kirkendoll.[6]  Doc. 31-2 at 1; Gov't Ex. 10; Tr. at 22, 24.  Although Defendant was not in custody, Sergeant Kirkendoll read Defendant his *Miranda* rights.  Doc. 31-2 at 1; Gov't Ex. 10 at NELS_00594-596; Tr. at 22, 24.  Defendant also executed a *Miranda* waiver, acknowledging he understood his rights, which were listed on the waiver.  Doc. 31-2 at 1; Gov't Ex. 9.

6.      Defendant told Sergeant Kirkendoll that he met Nicholas and Justin Diemel at 3:30 p.m. on July 20, 2019, at the TREX convenience store on Missouri Route 116.  Doc. 31-2 at 1; Gov't Ex. 10 at NELS_00597-598.  Defendant arrived in a semi-truck, and the Diemels were driving a Ford F-250 truck.  Doc. 31-2 at 1; Gov't Ex. 10 at NELS_00598.  Defendant indicated he got in the truck with the Diemels, and the three of them drove to, among other places, Gallatin, Hamilton, Braymer, and Lawson.  Doc. 31-2 at 1; Gov't Ex. 10 at NELS_00599-603; Tr. at 25. Defendant said he drove the rental truck "part of the time" on July 20, 2019, because Nicholas Diemel was not feeling well.  Doc. 31-2 at 1; Gov't Ex. 10 at NELS_00604; Tr. at 25, 42-44.

7.      Around 9:30 a.m. on July 21, 2019, Defendant advised that the Diemels returned to his farm.  Doc. 31-2 at 1-2; Gov't Ex. 10 at NELS_00609-10; Tr. at 25.  Nicholas Diemel drove the truck, and he was accompanied by Justin Diemel and a "cowboy looking dark complected male."  Doc. 31-2 at 1-2; Gov't Ex. 10 at NELS_00610-11; Tr. at 25.  According to Defendant, the cowboy seemed upset.  Tr. at 25; Gov't Ex. 10 at NELS_00612, NELS_000631.

8.      According to Defendant, the Diemels left his farm at approximately 11:30 a.m. Doc. 31-2 at 2; Gov't Ex. 10 at NELS_00634.  About twenty minutes later, Defendant called Nicholas Diemel and asked him for a ride to AB Farms.  Doc. 31-2 at 2; Gov't Ex. 10 at

---

[6] In July 2019, Kirkendoll was a detective sergeant.  Tr. at 16.  Currently, he is the undersheriff and a major.  *Id.*

NELS_00633, NELS_00635.  The Diemels returned to Defendant's farm, picked him up, and dropped him off at AB Farms around 1:00 p.m.  Doc. 31-2 at 2; Gov't Ex. 10 at NELS_00589, NELS_00633, NELS_00636, NELS_00639.

**D.     Interview of Defendant on July 24, 2019**

9.      On July 24, 2019, Defendant agreed to speak with Sergeant Kirkendoll again.  Doc. 31-3; Gov't Ex. 12[7]; Tr. at 26.  Defendant, who was not in custody, was again advised of his *Miranda* rights.  Doc. 31-3 at 1; Gov't Ex. 12 at NELS_00687-88; Tr. at 26.  He verbally confirmed he understood his rights and also signed a *Miranda* waiver, acknowledging he understood his rights, which appeared on the waiver.  Doc. 31-3 at 1; Gov't Ex. 11; Gov't Ex. 12 at NELS_00687-88; Tr. at 26.

10.     Defendant told Sergeant Kirkendoll that he drove the rental truck "some" on July 20, 2019.  Gov't Ex. 12 at NELS_00731-32; Tr. at 42-43.  He also admitted he drove the rental truck on July 21, 2019.  Doc. 31-3 at 1; Gov't Ex. 12 at NELS_00731; Tr. at 26-27, 42, 44-45.  Defendant recounted that on July 21, 2019, three individuals were holding the Diemels at gunpoint at his farm.  Doc. 31-3 at 1; Gov't Ex. 12 at NELS_711-12; Tr. at 27.  According to Defendant, one of those individuals directed him to drive the rental truck from Defendant's farm to a commuter parking lot in Holt, Missouri.  Doc. 31-3 at 1; Gov't Ex. 12 at NELS_00717-18, NELS_00731-35, NELS_00742, NELS_00848-50; Tr. at 26-27, 44, 46.  Defendant did not tell Sergeant Kirkendoll that Nicholas Diemel gave him permission to drive the rental truck on July 21, 2019.  Tr. at 30.

---

[7] The entire transcript from the July 24, 2019 interview was not provided to the Court.  *See, e.g.*, Gov't Ex. 12 at NELS_00785-86 (skipping pages 101 through 107).  Given the limited purpose for which the exhibit was offered and admitted, the missing pages, in all likelihood, would not have impacted the undersigned's recommendation.

5

### E. Security Camera Videos and the Rental Truck's GPS Data

11.     As part of the investigation into the Diemels' disappearance, Caldwell County Deputy Sheriff Dennis Lund[8] viewed video surveillance taken by security cameras in Polo, Missouri. Doc. 31-4 at 2; Tr. at 56. One video revealed the rental truck traveling south on Missouri Highway 13 to a four-way stop at 12:18 p.m. on July 21, 2019. Doc. 31-4 at 2; Tr. at 45-46. There did not appear to be anyone riding in the passenger seat. *Id*. At 12:19 p.m., video from a different security camera showed the rental truck traveling west on Missouri Route 116 with no one in the passenger seat. Doc. 31-4 at 2; Tr. at 45-46, 56.

12.     Law enforcement received information generated by the rental truck's black box. Tr. at 31, 50. According to the black box, the rental truck arrived at 3321 Southeast Catawba around 9:26 a.m. on July 21, 2019, and left at about 11:44 p.m. that same day. Doc. 31-4 at 2.[9]

### F. Probable Cause Affidavit

13.     Beginning around 7:40 a.m. on July 26, 2019, Deputy Lund drafted a probable cause affidavit. Doc. 31-4; Tr. at 44, 54-55, 59-60. Under penalty of perjury, Deputy Lund averred he had probable cause to believe Defendant committed the offense of tampering with a motor vehicle in the first degree on July 21, 2019. Doc. 31-4 at 1-2; *see also* Tr. at 54-55. Specifically, he informed the state court, "Based on my investigation, I believe [Defendant] drove the 2019 Ford F-250 rental truck without consent of the renter N. Diemel's permission or the [r]ental companies [sic] permission." Doc. 31-4 at 2; *see also* Tr. at 63-65. In support of his belief that Defendant committed the crime of tampering with a motor vehicle in the first degree on July 21, 2019, Deputy Lund submitted, *inter alia*, the following information:

---

[8] In July 2019, Lund was a deputy sheriff. Tr. at 54. Currently, he is a "[s]ergeant, bailiff, and evidence tech." *Id*.

[9] Although the exact date law enforcement received the rental truck's GPS data is unknown, it is undisputed that Deputy Lund received the GPS data before he completed his probable cause affidavit. Tr. at 50, 55-56.

(a)    On July 20, 2019, Nicholas Diemel rented a black 2019 Ford F-250 truck, and pursuant to the rental agreement, he was the only authorized driver.  Doc. 31-4 at 1-2; *see also* Tr. at 55, 65.

(b)    According to "the GPS route information pulled from the truck[']s black box," the rental truck arrived at 3321 Catawba Road, where Defendant conducts farming operations, at 9:26 a.m. on July 21, 2019, and left at 11:44 a.m. that same day.  Doc. 31-4 at 2.

(c)    At approximately 12:18 p.m. on July 21, 2019, security camera videos taken in Polo, Missouri, showed the rental truck traveling south on Missouri Highway 13 and then west on Missouri Route 116.  Doc. 31-4 at 2; *see also* Tr. at 56.  In the videos, the driver appeared to be the rental truck's sole occupant.  Doc. 31-4 at 2; *see also* Tr. at 56, 66-67.

(d)    According to the GPS data obtained from its black box, the rental truck arrived at the commuter parking lot in Holt, Missouri at 12:45 p.m. on July 21, 2019.  Doc. 31-4 at 2; *see also* Tr. at 55-56.

(e)    On July 22, 2019, the rental truck was found unattended in a commuter parking lot in Holt, Missouri, with the keys in the ignition and the lights illuminated.  Doc. 31-4 at 1-2; *see also* Tr. at 56.

(f)    Defendant admitted he drove the rental truck to the commuter parking lot in Holt, Missouri on July 21, 2019, and left the rental truck there.  Doc. 31-4 at 2; *see also* Tr. at 55-56, 62-63, 66-67.

(g)    As of the drafting of the probable cause affidavit, the Diemels remained missing, and their whereabouts were unknown.  Doc. 31-4 at 2; *see also* Tr. at 56.

14.     Deputy Lund testified he did not state anything false in his probable cause affidavit. Tr. at 57.  And he did not leave anything out of the probable cause affidavit that would have shown Defendant was innocent.  *Id*.

15.     When he wrote the probable cause affidavit, Deputy Lund did not know Defendant drove the rental truck – with or without permission – on Saturday, July 20, 2019.  Tr. at 57, 63.[10] In addition, Deputy Lund did not know Defendant had previously told Sergeant Kirkendoll that he drove the rental truck for part of the time on July 20, 2019.  *Id*.  Deputy Lund was not present when Sergeant Kirkendoll interviewed Defendant on July 23, 2019, or July 24, 2019.  Tr. at 40, 61.

16.     Sergeant Kirkendoll did not write the probable cause affidavit but conveyed information to Deputy Lund.  Tr. at 16-17, 40, 44-45.  By supplying information, the sergeant did not intend to mislead the judge who received the probable cause affidavit.  Tr. at 17.

17.     At approximately 9:50 a.m. on July 26, 2019, Deputy Lund completed the probable cause affidavit, and the probable cause affidavit was submitted to the Caldwell County Prosecuting Attorney's Office.  Docs. 31-4, 34-2; Tr. at 17, 59-60.

**G.     Interview of Defendant on July 26, 2019**

18.     Beginning around 10:30 a.m. on July 26, 2019, Sergeant Kirkendoll interviewed Defendant once more.  Gov't Ex. 14; Tr. at 32, 49.  Defendant was not under arrest or in custody during the interview.  Tr. at 33.  Nonetheless, Sergeant Kirkendoll read Defendant his *Miranda* rights, and Defendant executed a *Miranda* waiver.  Gov't Ex. 14 at NELS_00939; Gov't Ex. 13; Tr. at 32-33, 48-49.

---

[10] During this portion of the hearing, Government counsel referenced "the day before, Saturday, July 21st."  Tr. at 57. The questioning immediately preceding this reference focused on Sunday, July 21st, making Saturday, July 20th "the day before."  *Id.* at 42, 45, 50.  Consequently, it appears counsel misspoke when she referred to Saturday as July 21st, instead of July 20th.

## H.    Arrest Warrant and Charges

19.    On the afternoon of July 26, 2019, the Caldwell County Special Prosecuting Attorney filed a criminal complaint charging Defendant with tampering with a motor vehicle in the first degree and requested an arrest warrant.  Doc. 34-2; Tr. at 17.  Deputy Lund's probable cause affidavit accompanied the complaint and arrest warrant request.  Doc. 34-4 at 3; Tr. at 40.

20.    On the afternoon of July 26, 2019, the Circuit Court of Caldwell County, finding probable cause that Defendant committed the crime of tampering with a motor vehicle in the first degree on July 21, 2019, issued a warrant for his arrest.  Doc. 34-3; Doc. 34-4 at 3; Tr. at 17.

21.    At the conclusion of Sergeant Kirkendoll's interview with Defendant on July 26, 2019, law enforcement had received the signed arrest warrant, and Defendant was arrested for tampering with a motor vehicle in the first degree.  Gov't Ex. 14 at NELS_1052; Tr. at 34-35, 40, 47, 49.

## I.    Post-Arrest Statements

22.    On July 30, 2019, and August 6, 2019, Defendant, while in custody, was interviewed by law enforcement.  Gov't Exs. 16, 18; Tr. at 35, 38-39.  At the beginning of each interview, he was read his *Miranda* rights, and he executed *Miranda* waivers.  Gov't Ex. 15; Gov't Ex. 16 at NELS_01056-57; Gov't Ex. 17; Gov't Ex. 18 at NELS_01288; Tr. at 35, 38-39.  In both *Miranda* waivers, Defendant acknowledged he understood his rights, which were listed on the waivers, and he agreed to speak with law enforcement.  Gov't Exs. 15, 17; Tr. 38-39.  During these interviews, Defendant made statements the Government intends to use at trial in the matter pending before this Court.  Tr. at 7.

### III. DISCUSSION[11]

The Fourth Amendment provides "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. An affidavit supporting a warrant is presumed valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978) (search warrant); *United States v. Randle*, 39 F.4th 533, 537 (8th Cir. 2022) (citation omitted) (observing a search warrant affidavit is presumed valid); *United States v. Barbosa*, 896 F.3d 60, 67 (1st Cir. 2018) (arrest warrant). However, an affidavit that includes deliberately false allegations, recklessly disregards the truth, or intentionally or recklessly omits key facts may violate the Fourth Amendment. *Franks*, 438 U.S. at 155-56; *Hartman v. Bowles*, 39 F.4th 544, 546 (8th Cir. 2022) (citation omitted).

Defendant argues the July 26, 2019 probable cause affidavit that supported his arrest on tampering charges violated his Fourth Amendment rights because it made a false suggestion, was misleading, and omitted a fact. Doc. 31 at 4, 6-7; Tr. at 5-6. The Government contends Defendant failed to satisfy the substantial preliminary showing required for an evidentiary hearing on his claim. Doc. 34 at 1, 9-13. Alternatively, the Government argues if Defendant met the substantial preliminary showing, no Fourth Amendment violation occurred. *Id.*[12]

---

[11] In its opposition to the pending motion, the Government emphasizes Defendant twice waived his state court preliminary hearing related to the tampering charge, and thus, he "acknowledged probable cause supported the tampering" charge against him. Doc. 34 at 1-3, 12; *see also* Doc. 34-4, 34-5, 34-6, 34-7, 34-8; Gov't Ex. 5; Gov't Ex. 7 at 1; Tr. 17-20. During the hearing, the Court inquired about any effect the state court waivers had on the pending motion. Tr. at 8-9. Defense counsel maintained the waivers did not limit Defendant's ability to move to suppress evidence in this Court. Tr. at 9-10. Government counsel conceded she was not suggesting there was a "legal waiver," or Defendant waived his right to seek suppression. Tr. at 10-11. But the Government argued the waivers "put this case in a different position than . . . other cases in which . . . there is a *Franks* hearing" because "the state court is capable of . . . determining whether [it has] probable cause." *Id.* Neither in its brief nor during its argument did the Government cite authority supporting its assertion. Therefore, the Court does not address this unsubstantiated assertion.

[12] The Government's additional arguments are addressed *infra*, sections III(B) and III(C).

**A.**     *Franks v. Delaware*

Although not referenced in Defendant's motion, *Franks v. Delaware* provides the legal framework for the Court's analysis. Pursuant to *Franks*, a probable cause affidavit accompanying a search warrant may be challenged if it "contains factual misrepresentations or omissions relevant to the probable cause determination." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (citing *Franks*, 438 U.S. at 155-56). The Eighth Circuit Court of Appeals has extended and applied *Franks* to probable cause affidavits supporting arrest warrants. *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014); *Hawkins v. Gage Cnty.*, 759 F.3d 951, 958 (8th Cir. 2014) (recognizing the *Franks* rule "applies equally to an affidavit supporting an arrest warrant").[13] Before addressing whether a *Franks* violation occurred, the Court must first determine whether Defendant is entitled to an evidentiary hearing.

**(1)     Entitlement to a *Franks* Hearing**[14]

A defendant is entitled to a *Franks* hearing when he or she makes "a substantial preliminary showing that there was an intentional or reckless false statement or omission which was necessary to the finding of probable cause." *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008); *see also Franks*, 438 U.S. at 155-56; *United States v. Daigle*, 947 F.3d 1076, 1083 (8th Cir. 2020). This substantial preliminary showing required for a *Franks* hearing "is not lightly met." *Arnold*,

---

[13] Although the United States Supreme Court has not applied *Franks v. Delaware* to arrest warrants, Government counsel averred *Franks* would apply in this case. Doc. 34 at 9; Tr. at 3. Defense counsel did not disagree the Supreme Court "probably would" apply *Franks* to arrest warrants. Tr. at 8.

[14] Due to the condensed timeframe surrounding the filing of Defendant's motion to suppress and the current trial setting, the undersigned scheduled a hearing without addressing whether Defendant made the threshold showing for a *Franks* hearing. Before hearing any evidence, the undersigned informed the parties that the issue of whether Defendant met the preliminary showing required for a *Franks* hearing had not been decided and remained under advisement. *See United States v. Clenney*, 631 F.3d 658, 661 (4th Cir. 2011) (noting the district court initially found the defendant did not meet the burden entitling him to a *Franks* hearing but later allowed the defendant to present evidence "as a matter of grace and out of an abundance of caution."); *United States v. Hatcher*, No. 19-CR-1036-CJW, 2020 WL 1899134, at *21-22 (N.D. Iowa Feb. 5, 2020) (concluding the defendant did not meet the substantial preliminary showing for a *Franks* hearing but taking under advisement whether the defendant was entitled to a "contingent *Franks* hearing"), *report and recommendation adopted*, 441 F. Supp. 3d 723 (N.D. Iowa 2020).

725 F.3d at 898 (citation omitted). A defendant must assert the affidavit contained a deliberate falsehood or recklessly disregarded the truth. *Franks*, 438 U.S. at 171. An attack on an affidavit "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* "Allegations of negligence or innocent mistake are insufficient." *Id.*

### (a)    Supporting Documents or Similarly Reliable Statements

To meet the substantial preliminary showing, a defendant must provide "specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Hansen*, 27 F.4th 634, 637 (8th Cir. 2022) (citation omitted); *United States v. Short*, 2 F.4th 1076, 1080 (8th Cir. 2021). If the defendant does not provide "sworn or otherwise reliable statements of witnesses," "their absence [must be] satisfactorily explained." *Franks*, 438 U.S. at 171. When the defendant offers no proof that "an affiant deliberately lied or recklessly disregarded the truth, a *Franks* hearing is not required." *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998) (citation omitted); *see also United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (citation omitted).

In support of his argument that the probable cause affidavit violated his Fourth Amendment rights, Defendant relies on Deputy Horinek's July 21, 2019 report and Sergeant Kirkendoll's July 23, 2019 and July 24, 2019 reports (hereinafter, "reports"). Docs. 31-1, 31-2, 31-3.[15] These reports are not affidavits, and they are not witness statements. Moreover, Defendant cites no authority demonstrating the reports constitute offers of proof establishing he is entitled to a *Franks* hearing. For purposes of this report and recommendation, the undersigned assumes, without making a

---

[15] In his motion, Defendant also included what he described as an excerpt from a 2021 deposition of Deputy Lund, arguing the deputy expressed "skepticism that anyone driving a rental vehicle who was not on the contract was committing the crime of tampering." Doc. 31 at 5. In the deposition excerpt, Deputy Lund was asked if his brother would be guilty of the crime of tampering in the first degree if the deputy rented a vehicle, and after he got tired of driving, he let his brother (who did not sign the rental agreement) drive the vehicle. *Id.* Assuming this evidence is properly before the Court, the hypothetical question posed therein is inapposite to the facts in this matter.

finding or recommendation, the reports are "reliable" statements similar to affidavits for purposes of analyzing the entitlement to a *Franks* hearing.

### (b)    False Suggestion, Misleading Statement, and Omission of Fact

Defendant claims the July 26, 2019 probable cause affidavit violated his Fourth Amendment rights because it (1) "falsely" suggested someone not listed as an approved driver on a rental agreement commits the crime of tampering in the first degree if he or she drives a rental vehicle, (2) misled the judge by stating Defendant did not have Nicholas Diemel's permission to drive the rental truck "while the Diemel brothers were themselves in the [rental] truck as passengers," and (3) omitted the fact that Defendant had Nicholas Diemel's permission to drive the rental truck.  Doc. 31 at 6-7; Tr. at 5-6.  The undersigned addresses each argument in turn.

First, a review of the probable cause affidavit alone undermines Defendant's argument that Deputy Lund falsely suggested someone commits the crime of tampering with a motor vehicle in the first degree when he drives a rental vehicle but is not listed on the rental agreement.  While the probable cause statement indicated Nicholas Diemel was the "only authorized driver" on the rental agreement, Deputy Lund also stated his belief that Defendant drove the rental truck "without consent of the renter N. Diemel's permission **or** the [r]ental companies [sic] permission."  Doc. 31-4 at 2 (emphasis added).  Contrary to Defendant's argument, the probable cause affidavit did not solely contend Defendant committed the crime of tampering with a motor vehicle in the first degree because he was not an authorized driver pursuant to the rental agreement.  Rather, Deputy Lund examined the two sources – i.e., Nicholas Diemel or the rental company – who could have, but did not, give Defendant permission to drive the rental truck on July 21, 2019.  Mo. Rev. Stat. § 569.080.1(2) (2017) ("A person commits the offense of tampering in the first degree if he or she . . . unlawfully operates an automobile . . . without the consent of the owner thereof."); *Missouri*

*v. White*, 947 S.W.2d 101, 103 (Mo. Ct. App. 1997) (holding "proof of lack of consent" under Missouri's tampering statute "is not limited to the testimony of the title owner, but may be provided by the testimony of the person who had the exclusive use and possession of the vehicle at the time of the alleged tampering.").

Second, the reports that Defendant proffers do not support his argument that Deputy Lund misled the state court by asserting Defendant did not have Nicholas Diemel's permission to drive the rental truck "while the Diemel brothers were themselves passengers in the truck." Doc. 31 at 6. Deputy Lund's probable cause statement was limited to Defendant driving the rental truck on July 21, 2019, the date of the charged tampering offense. The reports establish Defendant admittedly drove the rental truck to the commuter parking lot in Polo, Missouri, on July 21, 2019. The reports also confirm Defendant was the only occupant in the rental truck when he drove it that day. The Diemels were not passengers.[16]

Third, the reports do not corroborate Defendant's argument that Deputy Lund intentionally or recklessly omitted from the probable cause affidavit that Defendant purportedly had Nicholas Diemel's permission to drive the rental truck. As set forth above, Deputy Lund's probable cause affidavit focused on Defendant driving the rental truck on July 21, 2019. Nothing in the reports offered by Defendant demonstrates Nicholas Diemel gave Defendant permission to drive the rental truck on July 21, 2019.

Defendant has not offered proof that Deputy Lund made a false suggestion, misled the state court, or omitted a fact. Thus, he has not met the substantial preliminary showing required for a

---

[16] To the extent Defendant is suggesting Deputy Lund misled the state court by failing to state Defendant purportedly had Nick Diemel's permission (expressly or implicitly) to drive the rental truck on the prior date, July 20, 2019, the Court discusses that argument below. *See infra*, section III(A)(2)(b). At this stage, the Court limits its examination to the reports proffered by Defendant in support of his arguments.

*Franks* hearing. Accordingly, the undersigned recommends the Court find Defendant is not entitled to a *Franks* hearing and deny his pending motion to suppress.

**(2)** ***Franks* Violation**

Even if the Court were to find Defendant satisfied the substantial preliminary showing for a *Franks* hearing, the undersigned recommends the Court conclude no *Franks* violation occurred. To establish a *Franks* violation, a defendant must prove by a preponderance of the evidence (1) the affiant knowingly and intentionally (or with reckless disregard for the truth) included a false statement necessary to the probable cause finding, or omitted facts with the intent to make (or in reckless disregard of whether the omitted facts rendered) the affidavit misleading; and (2) the affidavit, if the false statement is excised or the omitted information is supplemented, could not support a probable cause finding. *Franks*, 438 U.S. at 171-72; *Hartman*, 39 F.4th at 546 (citation omitted); *United States v. Reed*, 921 F.3d 751, 756 (8th Cir. 2019) (citation omitted); *Hawkins*, 759 F.3d at 959 (citation omitted); *United States v. Butler*, 594 F.3d 955, 960-61 (8th Cir. 2010) (citation omitted). The undersigned first addresses Defendant's claim that Deputy Lund made false and misleading statements in his affidavit, and then turns to the allegation that Deputy Lund omitted a fact.

**(a)** ***False Suggestion and Misleading Statement***

To satisfy his burden of showing Deputy Lund made a false or misleading statement, Defendant only offered the reports and cross-examined the deputy at the evidentiary hearing. As set forth *supra*, section III(A)(1)(b), the reports do not establish Deputy Lund either (1) falsely suggested someone not listed as an approved driver on a rental agreement commits the crime of tampering in the first degree if he or she drives a rental vehicle, or (2) misled the judge by stating Defendant did not have Nicholas Diemel's permission to drive the rental truck "while the Diemel

brothers were themselves in the [rental] truck as passengers." Moreover, Deputy Lund testified he did not state anything false in his probable cause affidavit. Because there is no evidence that Deputy Lund knowingly and intentionally made a false or misleading statement in the probable cause affidavit, the undersigned recommends the Court conclude no *Franks* violation occurred and deny Defendant's motion to suppress related to the purportedly false and misleading statements.

If the Court, however, were to find Deputy Lund's statements were somehow false or misleading, the undersigned's recommendation would remain unchanged. Specifically, if the purportedly false and misleading statements are removed, the affidavit would still support a probable cause finding. Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). With an arrest warrant, probable cause "exists when there is a substantial probability that a crime has been committed and that a specific individual committed the crime." *Odom v. Kaizer*, 864 F.3d 920, 923 (8th Cir. 2017) (citation and quotation marks omitted). When considering whether an affidavit establishes probable cause, courts apply commonsense. *Block v. Dupic*, 758 F.3d 1062, 1064 (8th Cir. 2014) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)); *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993) (citation omitted) (noting courts do not apply a "hypertechnical" approach when considering affidavits seeking the issuance of a warrant). Whether probable cause exists is a question of law. *See United States v. Harris*, 617 F.3d 977, 978 (8th Cir. 2010) (citation omitted).

Under Missouri law, "[a] person commits the offense of tampering in the first degree if he . . . [k]nowingly receives, possesses, sells, or unlawfully operates an automobile . . . without the consent of the owner thereof." Mo. Stat. Ann. § 569.080.1(2) (2017). When the allegedly false and misleading statements are excised, Deputy Lund's probable cause statement still supports a probable cause finding. It establishes Defendant admittedly drove the rental truck on July 21,

2019; the rental truck was discovered where Defendant abandoned it; GPS evidence showed the rental truck traveled from Defendant's farm to where it was abandoned; the surveillance footage showed only one occupant in the rental truck before it was abandoned; and the rental truck did not belong to Defendant. Based on the foregoing, the undersigned recommends the Court find no *Franks* violation occurred and deny Defendant's motion with regard to the allegedly false and misleading statements.

### (b) *Omission of Fact*

Defendant maintains Deputy Lund omitted the fact that Nicholas Diemel gave Defendant permission to drive the rental truck on July 20, 2019.[17] Critical to Defendant's argument, Deputy Lund was unaware of Defendant's statements that he purportedly drove the rental truck on July 20, 2019, with or without anyone's permission. And Deputy Lund did not know what Defendant told Sergeant Kirkendoll about driving the rental truck on July 20, 2019. Because Deputy Lund did not know this fact, the Court must determine whether his failure to know this fact (or include it in his affidavit) gives rise to a *Franks* violation. *See Hartman*, 39 F.4th at 546. The Eighth Circuit recently reiterated that an officer who does not personally know information cannot intentionally or recklessly omit the information. *See id.* (quoting *United States v. Pulley*, 987 F.3d 370, 379 (4th Cir. 2021)); *see also United States v. Bausby*, 720 F.3d 652, 657-58 (8th Cir. 2013). Because Deputy Lund did not know Defendant claimed to have driven the rental truck on July 20, 2019 (the day before it was driven and abandoned by Defendant), he could not have intentionally or recklessly omitted the fact. Thus, the undersigned recommends the Court find there is no *Franks* violation and deny the pending motion.

---

[17] Because there is no evidence (or even argument) that Nicholas Diemel gave permission to Defendant to drive the rental truck on July 21, 2019, the undersigned presumes Defendant refers to Defendant's statements that suggested Nicholas Diemel gave Defendant permission to drive the rental truck on July 20, 2019, because he did not feel well.

If the Court were to find Deputy Lund recklessly omitted the fact that Defendant purportedly drove the rental truck with Nicholas Diemel's permission on July 20, 2019, the undersigned would recommend the Court find no *Franks* violation. If the affidavit was supplemented with the omitted fact, probable cause would have still existed. *See United States v. Smith*, 21 F.4th 510, 516 (8th Cir. 2021) (holding suppression will not be warranted unless the affidavit as supplemented by the omitted material fact could not have supported a finding of probable cause). Defendant seems to advocate that his statements that Nicholas Diemel gave him permission to drive the rental truck on July 20, 2019, also somehow granted him permission to drive the rental truck again on July 21, 2019. Defendant cites no authority for this proposition. Moreover, the circumstances surrounding the two instances when Defendant drove the rental truck could not be more different.

On July 20, 2019, Defendant indicated he had been travelling around with the Diemels when Nicholas Diemel began to feel unwell. Then, Defendant claimed he was asked to drive or was given permission to drive the rental truck. According to Defendant, both Diemels were passengers when Defendant drove the rental truck on July 20, 2019. There is no evidence, however, that Nicholas Diemel gave Defendant permission to drive the rental truck on July 21, 2019. Instead, Defendant told law enforcement an unidentified male told him to drive the rental truck. Defendant claimed that individual and others were holding the Diemels at gunpoint. Evidence gathered by law enforcement corroborated Defendant's admission that he drove the rental truck to the commuter parking lot in Holt, Missouri. Videos verified Defendant was the rental truck's sole occupant on July 21, 2019. The Diemels were not passengers on July 21, 2019.

If the probable cause affidavit had averred Defendant had Nicholas Diemel's permission to drive the rental truck on July 20, 2019, a probable cause finding would have still been supported.

*See supra*, III(A)(2)(a). Even with the additional fact, the affidavit would have established a substantial probability that Defendant committed the crime of tampering with a vehicle in the first degree on July 21, 2019, when he drove the rental truck without permission. Consequently, the undersigned recommends the Court find no *Franks* violation occurred and deny Defendant's motion to suppress with regard to the alleged omission of fact.

**B.      Good Faith Exception**

In its opposition to Defendant's motion to suppress, the Government contends that even if the probable cause affidavit could be deemed invalid, the good-faith exception would support the admissibility of Defendant's post-arrest statements. Doc. 34 at 13-17. "Under the good-faith exception, evidence seized pursuant to a search warrant later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015) (citation omitted); *see also United States v. Leon*, 468 U.S. 897, 922-23 (1984). The Government seems to concede the Eighth Circuit has not applied the good-faith exception to arrest warrants but cites no authority extending application of the good-faith exception beyond evidence seized to include statements. *See* Doc. 34 at 13-17.[18] The Court's independent research has not revealed any authority supporting the Government's argument that the good faith exception should apply to Mirandized statements after an arrest pursuant to an arrest warrant. Thus, the Government has not established the good-faith exception applies the facts presented in this matter.[19]

---

[18] The Court notes the Government cited authority for the good-faith exception extending to arrest warrants. Doc. 34 at 14-17  But the Government did not identify cases where the good-faith exception applied to post-arrest, Mirandized statements.

[19] If the Court were to conclude the good-faith exception applies, Defendant failed to argue or present evidence that the exception should not apply. The good-faith exception does not apply when (1) the affiant misled the judge by including information in the affidavit he or she knew was false or would have known was false, or the affiant omitted material that would have been critical to the finding of probable cause; (2) the judge wholly abandoned his or her neutral and detached position and acted as a rubber stamp; (3) no reasonably well-trained officer could rely on the warrant, as it was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence

## C.    Custodial Statements

Finally, the Government contends if the Court finds the arrest warrant violated Defendant's Fourth Amendment rights, Defendant's motion to suppress should be denied because his post-arrest statements were voluntary and made after he was read his *Miranda* rights.  Doc. 34 at 17-18.  "Statements that result from an illegal detention are not admissible."  *United States v. Hernandez-Hernandez*, 384 F.3d 562, 565 (8th Cir. 2004) (citation omitted).  However, "[t]he causal chain between an illegal arrest and a statement given later is broken . . . 'if the statement is sufficiently an act of free will to purge the primary taint.'"  *Id*. (citation omitted).  "In determining whether statements are sufficiently attenuated from an illegal seizure, we consider the 'temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct.'"  *United States v. Brooks*, 22 F.4th 773, 780 (8th Cir.), *cert. denied,* 142 S. Ct. 2826 (2022) (quoting *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)).  An important, but not dispositive, factor is whether law enforcement read *Miranda* rights to the suspect.  *Id*. (citation omitted).

Defendant was arrested on July 26, 2019.  He was interviewed on July 30, 2019, and August 6, 2019.  Four or more days passed between Defendant's arrest and when he next spoke with law enforcement.  The passage of time sufficiently purged any taint from the allegedly unlawful arrest.  *See id*. (finding two hours between the unlawful seizure and the defendant's questioning sufficiently purged the taint from the unlawful arrest because the questioning "did not come hard

entirely unreasonable; or (4) the warrant itself is so facially defective that the executing officer cannot presume its validity.  *See Leon,* 468 U.S. at 922-23; *Wheeler v. City of Searcy, Ark.*, 14 F.4th 843, 852-53 (8th Cir. 2021) (citation omitted); *United States v. Conant*, 799 F.3d 1195, 1201-02 (8th Cir. 2015).  Deputy Lund did not make a false suggestion, did not mislead the judge, and did not intentionally omit a material fact in his affidavit.  *See supra*, section III(A)(1)-(2).  Further, there is no indication the state court judge abandoned his neutral and detached position or acted as a rubber stamp.  Finally, the undersigned cannot find the affidavit was so lacking in indicia of probable cause or so facially defective that the executing officers could not presume the warrant's validity.  Thus, if the Court finds the probable cause affidavit is invalid and the good-faith exception applies to Mirandized, custodial statements given after an arrest on an arrest warrant, the undersigned recommends the Court deny Defendant's motion to suppress.

on the heels of an unlawful arrest," and the defendant had time to pause and reflect). In addition, at the beginning of each interview in this case, Defendant was read his *Miranda* rights and executed *Miranda* waivers. Defendant's acknowledgment and knowledge of his rights, and his decision to waive those rights weighs against suppression. *See id*. Finally, if law enforcement's conduct in arresting Defendant was unlawful, there is no evidence – or even suggestion – that the conduct was "flagrantly" unlawful. *See id*. ("For the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure.") (citation omitted).

Based on the circumstances presented in this case, the undersigned recommends that if Defendant's arrest could be found to be unlawful, any causal connection between the supposedly unlawful arrest and Defendant's voluntary statements was broken, and therefore, his motion to suppress should be denied.

## IV.    CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendant's Motion to Suppress Statements (Doc. 31).

Counsel are reminded they have fourteen days in which to file any objections to this Report and Recommendation. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation except on the grounds of plain error or manifest injustice.

DATE: August 22, 2022                          */s/ W. Brian Gaddy*
                                                                W. BRIAN GADDY
                                                                UNITED STATES MAGISTRATE JUDGE